**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GEORGE E. JACOBS, IV,<br><br>      Petitioner,<br><br><br><br>  v.<br><br><br><br>DAVE DAVEY, Warden,<br><br>      Respondent. | Case No. 1:11-cv-00934-AWI-SKO-HC<br><br>ORDER SUBSTITUTING WARDEN DAVE DAVEY AS RESPONDENT<br><br>ORDER DENYING PETITIONER'S REQUEST FOR APPOINTMENT OF COUNSEL (DOC. 31)<br><br>FINDINGS AND RECOMMENDATIONS TO DENY THE PETITION FOR WRIT OF HABEAS CORPUS (DOC. 1), DENY PETITIONER'S REQUEST FOR AN EVIDENTIARY HEARING (DOC. 31), ENTER JUDGMENT FOR RESPONDENT, AND DECLINE TO ISSUE A CERTIFICATE OF APPEALABILITY<br><br>**OBJECTIONS DEADLINE:**<br>**THIRTY (30) DAYS** |

Petitioner is a state prisoner proceeding pro se and in forma pauperis with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rules 302 through 304. Pending before the Court is the petition, which was filed on June 9, 2011.

///

1

1  I.   Jurisdiction and Order Substituting Respondent

2  Because the petition was filed after April 24, 1996, the

3  effective date of the Antiterrorism and Effective Death Penalty Act

4  of 1996 (AEDPA), the AEDPA applies in this proceeding.  Lindh v.

5  Murphy, 521 U.S. 320, 327 (1997); Furman v. Wood, 190 F.3d 1002,

6  1004 (9th Cir. 1999).

7  The challenged judgment was rendered by the Superior Court of

8  the State of California, County of Kings (KCSC), located within the

9  jurisdiction of this Court.  28 U.S.C. §§ 84(b), 2254(a), 2241(a),

10  (d).  Further, Petitioner claims that in the course of the

11  proceedings resulting in his conviction, he suffered violations of

12  his constitutional rights.  Accordingly, the Court concludes that it

13  has subject matter jurisdiction over the action pursuant to 28

14  U.S.C. §§ 2254(a) and 2241(c)(3), which authorize a district court

15  to entertain a petition for a writ of habeas corpus by a person in

16  custody pursuant to the judgment of a state court only on the ground

17  that the custody is in violation of the Constitution, laws, or

18  treaties of the United States.  Williams v. Taylor, 529 U.S. 362,

19  375 n.7 (2000); Wilson v. Corcoran, 562 U.S. - , -, 131 S.Ct. 13, 16

20  (2010) (per curiam).

21  An answer was filed on behalf of Respondent Connie Gipson,

22  Warden of the California State Prison at Corcoran, California (CSP-

23  COR), who had custody of Petitioner when the answer was filed.

24  (Ans., doc. 27 at 6.)  However, reference to the official website of

25  the California Department of Corrections and Rehabilitation (CDCR)[1]

26  _____

27  [1] The Court may take judicial notice of facts that are capable of accurate and
ready determination by resort to sources whose accuracy cannot reasonably be
28  questioned, including undisputed information posted on official websites.  Fed. R.
Evid. 201(b); United States v. Bernal-Obeso, 989 F.2d 331, 333 (9th Cir. 1993);

2

shows that presently the warden of the CSP-COR is no longer Connie Gipson but rather is Dave Davey.

In naming Warden Susan Hubbard in the petition, Petitioner named his custodian at the time, a person who had custody of Petitioner within the meaning of 28 U.S.C. § 2242 and Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts (Habeas Rules). See, Stanley v. California Supreme Court, 21 F.3d 359, 360 (9th Cir. 1994). Accordingly, the Court concludes it has jurisdiction over the person of the Respondent. However, in view of the fact that the warden at CSP-COR is now Dave Davey, it is ORDERED that Dave Davey, Warden of the California State Prison at Corcoran, is SUBSTITUTED as Respondent pursuant to Fed. R. Civ. P. 25.[2]

II.   Order Denying Petitioner's Request for the Appointment of Counsel

Petitioner requests that counsel be appointed. (Doc. 31, 3.)

There currently exists no absolute right to the appointment of counsel in non-capital, federal habeas corpus proceedings. McFarland v. Scott, 512 U.S. 849, 857 n.3 (1994); Miranda v. Castro, 292 F.3d 1063, 1067 (9th Cir. 2002); Anderson v. Heinze, 258 F.2d 479, 481 (9th Cir.), cert. denied, 358 U.S. 889 (1958). The Sixth Amendment right to counsel does not apply in habeas corpus actions,

---

Daniels-Hall v. National Education Association, 629 F.3d 992, 999 (9th Cir. 2010). The address of the official website for the CDCR is http://www.cdcr.ca.gov.

[2] Fed. R. Civ. P. 25(d) provides that when a public officer who is a party to a civil action in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending, the officer's successor is automatically substituted as a party. It further provides that the Court may order substitution at any time, but the absence of such an order does not affect the substitution.

which are civil in nature.  Chaney v. Lewis, 801 F.2d 1191, 1196 (9th Cir.1986); Anderson, 258 F.2d at 481.

However, a Magistrate Judge may appoint counsel at any stage of a habeas corpus proceeding if the interests of justice require it. 18 U.S.C. § 3006A; Rule 8(c) of the Rules Governing Section 2254 Cases in the United States District Courts (Habeas Rules).  A district court evaluates the likelihood of a petitioner's success on the merits and the ability of a petitioner to articulate his claims pro se in light of the complexity of the legal issues involved. Weygandt v. Look, 718 F.2d 952, 954 (9th Cir. 1983).

A district court abuses its discretion in denying an indigent's request for appointed counsel pursuant to 18 U.S.C. § 3006A(g) if appointment of counsel is necessary to prevent due process violations, such as when the case is so complex that due process violations will occur absent the presence of counsel.  Bonin v. Vasquez, 999 F.2d 425, 428 (9th Cir. 1993) (citing Chaney, 801 F.2d at 1196).  Factors considered in various cases include the number of claims, the nature and substance of the issues (difficulty, novelty, need for further briefing), the stage of the proceedings, pertinent circumstances concerning the condition of the petitioner (mental health issues, diagnoses, treatment, medical history), and the petitioner's ability to proceed with the action.

Here, Petitioner's case is not complex, and the issues are not novel or difficult.  No circumstances warrant a conclusion that the interests of justice require the appointment of counsel. Accordingly, it is ORDERED that Petitioner's request for the appointment of counsel is DENIED.

///

4

III.   <u>Procedural and Factual Summary</u>

A.   <u>Procedural Background</u>

At a jury trial Petitioner was convicted of three counts of battery by a confined person on a non-confined person in violation of Cal. Pen. Code § 4501.5 (counts 1-3), possession of a sharp instrument by a confined person in violation of Cal. Pen. Code § 4502 (count 4), and two counts of assault on a correctional officer with a deadly weapon and by force likely to produce great bodily injury in violation of Cal. Pen. Code § 4500 (counts 5 and 6).  The jury also found true allegations that Petitioner used a deadly weapon in commission of counts 1 and 2 within the meaning of Cal. Pen. Code § 12022(b)(1), Petitioner had four prior serious felony convictions within the meaning of Cal. Pen. Code § 667(a)(1), and he had suffered four prior "strike" convictions within the meaning of Cal. Pen. Code §§ 667(b)-(i) and 1170.12(a)-(d). Petitioner represented himself at trial, but the court appointed counsel, at Petitioner's request, to assist him at the sentencing proceeding.  Petitioner was sentenced to an indeterminate term of fifty-four years to life plus a determinate term of forty years. (LD 1, LD 5 at 1-3.)[3]

The Court of Appeal of the State of California, Fifth Appellate District (CCA) affirmed the judgment on April 9, 2010 (LD 5), and the California Supreme Court (CSC) denied Petitioner's petition for review summarily on June 17, 2010 (LD 6, LD 7).

On June 9, 2011, Petitioner filed the initial petition for writ of habeas corpus in this Court.  After various proceedings involving stays precipitated by Petitioner's subsequent exhaustion of state

---

[3] "LD" refers to documents lodged by Respondent with the answer.

court remedies, the action now proceeds on the original petition with the exception of state law claims that were dismissed by the Court on March 27, 2012.  An answer was filed by Respondent on June 19, 2012, and a traverse was filed by Petitioner on August 22, 2012.

B.  <u>Factual Summary</u>

Because Petitioner challenges the sufficiency of the evidence to support his conviction of battery of Officer Scaife as well as the constitutionality of what he characterizes as an excessive sentence, the facts will be set forth in full.

In a habeas proceeding brought by a person in custody pursuant to a judgment of a state court, a determination of a factual issue made by a state court shall be presumed to be correct; the petitioner has the burden of producing clear and convincing evidence to rebut the presumption of correctness.  28 U.S.C. § 2254(e)(1); <u>Sanders v. Lamarque</u>, 357 F.3d 943, 947-48 (9th Cir. 2004).  This presumption applies to a statement of facts drawn from a state appellate court's decision.  <u>Moses v. Payne</u>, 555 F.3d 742, 746 n.1 (9th Cir. 2009).  The following statement of facts is taken from the opinion of the CCA in <u>People v. George Jacobs</u>, case number F057101, filed on April 9, 2010.

FACTS

One morning, Correctional Officer Matthew Oliveira was collecting the breakfast trays from inmates at Corcoran State Prison. The cell doors on the lock-down unit where Jacobs was housed have a small port that an officer must unlock to retrieve the tray. Jacobs, who was the only inmate in his cell, passed his tray through the port. After Oliveira disposed of the tray, he turned to close the port. As he did so, he was "speared in the right shoulder." The spear, which was three feet long with a one-and-one-half inch tip, appeared to be constructed of rolled-up paper and the tip appeared to be sharp metal. The spear contacted Oliveira at the upper part of his

6

right shoulder just above the armpit. Oliveira was wearing his uniform jumpsuit and a stab resistant vest. The spear's metal tip probably would have struck Oliveira's throat had he not leaned to his left. The metal tip did not reach his skin, although it left a small hole in the shoulder area of the jumpsuit. Jacobs continued his stabbing motion with the spear. As Oliveira reached for his pepper spray, he was hit twice in his left hip area with a yellow liquid that smelled like urine. The liquid, which was in white state-issued paper cups, was thrown from inside the cell through the port.

Correctional Sergeant Dennis Scaife and Correctional Officer Todd Cogdill came to assist Oliveira in response to an alarm. Scaife ordered Jacobs to "cuff up," which required Jacobs to place his back to the cell door and put his hands where they could be cuffed through the door's port. Jacobs nodded as though he understood. As Scaife approached the door to place the cuffs on Jacobs, he saw a flash of a three foot long spear-like weapon thrust in his direction. The weapon appeared to be made of rolled up newspaper, but Scaife did not see the tip. Cogdill could not tell whether the tip was made from a different material. Scaife felt the weapon tug on the left sleeve of his uniform, in the lower left bicep area; the weapon did not puncture or damage his uniform, and did not break his skin. Scaife actually felt the weapon strike him. Cogdill was not sure if the spear struck Scaife, but afterward Scaife said he thought he felt the spear hit his sleeve.

Correctional Officer Michael Baeza was the control booth officer that morning. When he saw Jacobs spear Oliveira, Baeza activated his personal alarm. Baeza then saw Jacobs "gas" Oliveira. When Scaife came to Oliveira's aide, Baeza saw Jacobs attempt to spear Scaife with the same implement. Baeza's view was partially obstructed, but he was able to see the spear-like object come out through the port toward Oliveira and Scaife. He could tell the object was long, but could not tell what it was made of or its exact length.

Correctional Officer Adrian Robles took photographs of the scene and searched Jacobs's cell. He also took custody of Oliveira's jumpsuit, which was admitted into evidence. Robles was trained in the methods by which inmates manufacture weapons constructed from paper. He explained that inmates roll paper from magazines or newspapers

7

tightly, and then use water and soap to form a hard
object. Inmates can then put on the end of the paper any
kind of metal object, such as a staple or razor blade, or
even a plastic toothbrush, and sharpen the end to a point.
When an object like this is thrown into water it becomes
soggy and falls apart. Robles observed a lot of water on
the floor of Jacobs's cell. He also saw wet paper in the
toilet and on the cell floor, which was possibly from a
magazine or newspaper. The spear-like weapon was not
found.

Defense

The jumpsuit Oliveira was wearing the day he was assaulted
was about two years old. He washed the jumpsuit
approximately twice a week. When he put it on that day, he
was certain the jumpsuit did not have a puncture in it at
the place where Jacobs speared him.

Correctional Officer Richard Castro searched Jacobs's cell
after the assault. He did not find any contraband or a
handmade weapon. The only liquid substance he found was in
the toilet; he did not identify the type of liquid it was.
No urine or fecal matter was found in the cell. There was
shredded, unraveled paper in the cell. Castro admitted an
inmate could flood his cell by plugging his toilet with
toilet paper and flushing the toilet continuously. The
paper found in Jacobs's toilet was consistent with trying
to flood the cell, but was also consistent with trying to
destroy an inmate-manufactured weapon. Castro did not find
any white cups. It would be normal for an inmate to
attempt to get rid of evidence of an inmate-manufactured
weapon by putting it in the toilet. Castro explained that
a spear can be made out of newspaper by rolling paper up
tightly and bonding it with soap, and sometimes wrapping
string around it. To destroy it, someone would just have
to wet it and take it apart.

Correctional Officer Geraldo Tamayo was picking up trash
and food trays with Oliveira the morning of the assault.
He saw a three foot long spear-like [object] with a
pointed end come out of the food port of Jacobs's cell.
Tamayo did not see the object strike Oliveira. Soon after,
he saw a liquid substance coming out of a white cup. When
Scaife approached the cell, Tamayo saw Jacobs stick the
spear-like object through the port again. He did not see
the object come into contact with Scaife.

8

People v. Jacobs, no. F057101, 2010 WL 1409196, *1-*3 (Apr. 9, 2010) (unpublished).

    IV.   Sufficiency of the Evidence

    Petitioner argues that his battery conviction must be reversed as a violation of due process because the evidence is insufficient to establish he wilfully touched Sergeant Scaife in a harmful or offensive manner; there was no evidence Petitioner directly applied physical force to Scaife or injured him.  (Pet., doc. 1 at 6-7, 12-16.)  Petitioner contends in the traverse that the facts have not been validly determined because the state court failed to hold an evidentiary hearing.  (Doc. 31 at 2-3.)

        A.   Standard of Decision and Scope of Review

    Title 28 U.S.C. § 2254 provides in pertinent part:

        (d) An application for a writ of habeas corpus on
        behalf of a person in custody pursuant to the
        judgment of a State court shall not be granted
        with respect to any claim that was adjudicated
        on the merits in State court proceedings unless
        the adjudication of the claim—

        (1) resulted in a decision that was contrary to,
        or involved an unreasonable application of, clearly
        established Federal law, as determined by the
        Supreme Court of the United States; or

        (2) resulted in a decision that was based on an
        unreasonable determination of the facts in light
        of the evidence presented in the State court
        proceeding.

    Clearly established federal law refers to the holdings, as opposed to the dicta, of the decisions of the Supreme Court as of

9

the time of the relevant state court decision.  <u>Cullen v.</u>
<u>Pinholster</u>, - U.S. -, 131 S.Ct. 1388, 1399 (2011); <u>Lockyer v.</u>
<u>Andrade</u>, 538 U.S. 63, 71 (2003); <u>Williams v. Taylor</u>, 529 U.S. 362,
412 (2000).

A state court's decision contravenes clearly established
Supreme Court precedent if it reaches a legal conclusion opposite
to, or substantially different from, the Supreme Court's or
concludes differently on a materially indistinguishable set of
facts.  <u>Williams v. Taylor</u>, 529 U.S. at 405-06.  A state court
unreasonably applies clearly established federal law if it either 1)
correctly identifies the governing rule but applies it to a new set
of facts in an objectively unreasonable manner, or 2) extends or
fails to extend a clearly established legal principle to a new
context in an objectively unreasonable manner.  <u>Hernandez v. Small</u>,
282 F.3d 1132, 1142 (9th Cir. 2002); see, <u>Williams</u>, 529 U.S. at 407.
An application of clearly established federal law is unreasonable
only if it is objectively unreasonable; an incorrect or inaccurate
application is not necessarily unreasonable.  <u>Williams</u>, 529 U.S. at
410.  A state court's determination that a claim lacks merit
precludes federal habeas relief as long as it is possible that
fairminded jurists could disagree on the correctness of the state
court's decision.  <u>Harrington v. Richter</u>, 562 U.S. -, 131 S.Ct. 770,
786 (2011).  Even a strong case for relief does not render the state
court's conclusions unreasonable.  <u>Id.</u>  To obtain federal habeas

relief, a state prisoner must show that the state court's ruling on a claim was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786-87. The standards set by § 2254(d) are "highly deferential standard[s] for evaluating state-court rulings" which require that state court decisions be given the benefit of the doubt, and the Petitioner bear the burden of proof. Cullen v. Pinholster, 131 S.Ct. at 1398. Further, habeas relief is not appropriate unless each ground supporting the state court decision is examined and found to be unreasonable under the AEDPA. Wetzel v. Lambert, --U.S.--, 132 S.Ct. 1195, 1199 (2012).

In assessing under section 2254(d)(1) whether the state court's legal conclusion was contrary to or an unreasonable application of federal law, "review... is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 131 S.Ct. at 1398. Evidence introduced in federal court has no bearing on review pursuant to § 2254(d)(1). Id. at 1400. Further, 28 U.S.C. § 2254(e)(1) provides that in a habeas proceeding brought by a person in custody pursuant to a state court judgment, a determination of a factual issue made by a state court shall be presumed to be correct. The petitioner has the burden of producing clear and convincing evidence to rebut the presumption of correctness. A state court decision on the merits and based on a

11

factual determination will not be overturned on factual grounds

unless it was objectively unreasonable in light of the evidence

presented in the state proceedings.  Miller-El v. Cockrell, 537 U.S.

322, 340 (2003).

    With respect to each claim, the last reasoned decision must be

identified to analyze the state court decision pursuant to 28 U.S.C.

§ 2254(d)(1).  Barker v. Fleming, 423 F.3d 1085, 1092 n.3 (9th Cir.

2005); Bailey v. Rae, 339 F.3d 1107, 1112-13 (9th Cir. 2003).  Here,

the last reasoned decision was the decision of the CCA.  Where there

has been one reasoned state judgment rejecting a federal claim,

later unexplained orders upholding that judgment or rejecting the

same claim are presumed to rest upon the same ground.  Ylst v.

Nunnemaker, 501 U.S. 797, 803 (1991).  Thus, this Court will look

through the CSC's discretionary denial of review to the decision of

the CCA.

    B.   The State Court's Decision

    The pertinent portion of the state court's decision is as

follows:

    *Sufficiency of the Evidence*

    Jacobs contends there is insufficient evidence to support
    his conviction in count 2 for battery by an inmate on a
    non-confined person because the evidence failed to
    establish that Jacobs directly applied any physical force
    to Scaife. Specifically, Jacobs asserts that Scaife never
    testified either (1) that he felt the weapon touch his
    sleeve or body, or (2) that the weapon contacted his
    sleeve which in turn touched his body. Jacobs reasons that
    the "tug" on Scaife's sleeve could have been caused by his
    own movement that occurred when he saw Jacobs swing the
    weapon, especially since no other officer testified they
    saw the weapon touch Scaife's body or clothing. We
    disagree.

12

> "Our duty on a challenge to the sufficiency of
> the evidence is to review the whole record in
> the light most favorable to the judgment for
> substantial evidence—credible and reasonable
> evidence of solid value—that could have enabled
> any rational trier of fact to have found the
> defendant guilty beyond a reasonable doubt.
> (*Jackson v. Virginia* (1979) 443 U.S. 307, 318,
> 99 S.Ct. 2781, 61 L.Ed.2d 560; *People v. Prince*
> (2007) 40 Cal.4th 1179, 1251, 57 Cal.Rptr.3d
> 543, 156 P.3d 1015.) In doing so, we presume in
> support of the judgment the existence of every
> fact a reasonable trier of fact could reasonably
> deduce from the evidence. (*Prince, supra*, 40
> Cal.4th at p. 1251, 57 Cal.Rptr.3d 543, 156 P.3d
> 1015.) The same standard of review applies to
> circumstantial evidence and direct evidence
> alike. (*Ibid.*)" (*People v. Gutierrez* (2009) 174
> Cal.App.4th 515, 519, 94 Cal.Rptr.3d 228.)

Jacobs was charged in count 2 with battery of a non-
confined person, namely Scaife, in violation of section
4501.5. As this court recently explained, "The elements of
a violation of this section are: (1) The defendant was
confined in a state prison; (2) while confined, the
defendant willfully touched the victim in a harmful or
offensive manner; and (3) the victim was not confined in a
state prison. (CALCRIM No. 2723.)" (*People v. Flores*
(2009) 176 Cal.App.4th 924, 930, 97 Cal.Rptr.3d 924
(*Flores*).) FN2 The jury here was instructed with CALCRIM
No. 2723, which "explains that the touching can be done
indirectly by causing an object to touch the other person,
and that the slightest touching can constitute a battery.
(See also *People v. Myers* (1998) 61 Cal.App.4th 328, 335,
71 Cal.Rptr.2d 518; *People v. Wright* (1996) 52 Cal.App.4th
203, 210, fn. 17, 59 Cal.Rptr.2d 316; 1 Witkin & Epstein,
Cal.Criminal Law (3d ed. 2000) Crimes Against the Person,
§ 13, p. 646.)" (*Flores, supra*, 176 Cal.App.4th at p. 930,
97 Cal.Rptr.3d 924.) FN3

> FN2. Section 4501.5 states: "Every person
> confined in a state prison of this state who
> commits a battery upon the person of any
> individual who is not himself a person confined
> therein shall be guilty of a felony and shall be
> imprisoned in the state prison for two, three,

or four years, to be served consecutively."

FN3. With respect to the touching required, the jury here was instructed with CALCRIM No. 2723 as follows: "The slightest touching can be enough to commit a battery if it is done in a rude or angry way. Making contact with another person, including through his or her clothing, is enough. The touching does not have to cause pain or injury of any kind. [¶] The touching can be done indirectly by causing an object to touch the other person."

Here, Scaife testified that the weapon made contact with him when he "felt [the weapon] tug my left sleeve of my uniform." When asked to show the jury where on his sleeve he was touched, Scaife raised his left arm and pointed to the lower left bicep area of his left arm with his right finger. When the prosecutor asked, "So you actually felt the implement strike you then?," Scaife responded, "Yes." When asked on cross-examination if in his direct testimony he "stated that an object came out of the cell and struck you in your left arm?," Scaife responded, "Sleeve of my uniform." Scaife confirmed on cross-examination that the object did not puncture his sleeve, damage the jumpsuit, break his skin, or cause any injuries.

From this evidence, a reasonable trier of fact reasonably could infer that Jacobs's weapon touched the sleeve of Scaife's uniform, and when it did so, as evidenced by Scaife's testimony that he felt a "tug" on his sleeve, the sleeve moved and touched him, thereby establishing through indirect contact the slight touching required for battery. Likewise, a reasonable trier of fact reasonably could make inferences contrary to those Jacobs argues, i.e. that the weapon did not actually touch his sleeve and the tug was caused by something other than the weapon. Before we can reverse the judgment for insufficiency of the evidence, "it must clearly appear that upon no hypothesis whatever is there sufficient substantial evidence to support it." (*People v. Redmond* (1969) 71 Cal.2d 745, 755, 79 Cal.Rptr. 529, 457 P.2d 321.) That is not the state of the record here. Jacobs's insufficiency of the evidence argument simply asks us to reweigh the facts. (*People v. Bolin* (1998) 18 Cal.4th 297, 331–333, 75 Cal.Rptr.2d 412, 956 P.2d 374.) That we cannot do.

14

People v. Jacobs, no. F057101, 2010 WL 1409196 at *3-*4.

> C.  Analysis

To determine whether a conviction violates the constitutional guarantee of due process because of insufficient evidence, a federal court ruling on a petition for writ of habeas corpus must determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319, 20-21 (1979); Windham v. Merkle, 163 F.3d 1092, 1101 (9th Cir. 1998); Jones v. Wood, 114 F.3d 1002, 1008 (9th Cir. 1997).

All evidence must be considered in the light most favorable to the prosecution.  Jackson, 443 U.S. at 319; Jones, 114 F.3d at 1008. It is the trier of fact's responsibility to resolve conflicting testimony, weigh evidence, and draw reasonable inferences from the facts; it must be assumed that the trier resolved all conflicts in a manner that supports the verdict.  Jackson v. Virginia, 443 U.S. at 319; Jones, 114 F.3d at 1008.  The relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but rather whether the jury could reasonably arrive at its verdict.  United States v. Mares, 940 F.2d 455, 458 (9th Cir. 1991).  Circumstantial evidence and inferences reasonably drawn therefrom can be sufficient to prove any fact and to sustain a conviction, although mere suspicion or speculation does not rise to the level of sufficient evidence.  United States v. Lennick, 18 F.3d 814, 820 (9th Cir.

1994); <u>United States v. Stauffer</u>, 922 F.2d 508, 514 (9th Cir. 1990);

see <u>Jones v. Wood</u>, 207 F.3d at 563.  The court must base its

determination of the sufficiency of the evidence from a review of

the record.  <u>Jackson</u> at 324.

The <u>Jackson</u> standard must be applied with reference to the

substantive elements of the criminal offense as defined by state

law.  <u>Jackson</u>, 443 U.S. at 324 n.16; <u>Windham</u>, 163 F.3d at 1101.

However, the minimum amount of evidence that the Due Process Clause

requires to prove an offense is purely a matter of federal law.

<u>Coleman v. Johnson</u>, - U.S. -, 132 S.Ct. 2060, 2064 (2012) (per

curiam).  For example, under <u>Jackson</u>, juries have broad discretion

to decide what inferences to draw and are required only to draw

reasonable inferences from basic facts to ultimate facts.   <u>Id.</u>

Further, under the AEDPA, federal courts must apply the

standards of <u>Jackson</u> with an additional layer of deference.  <u>Coleman</u>

<u>v. Johnson</u>, - U.S. -, 132 S.Ct. 2060, 2062 (2012); <u>Juan H. v. Allen</u>,

408 F.3d 1262, 1274 (9th Cir. 2005).  This Court thus asks whether

the state court decision being reviewed reflected an objectively

unreasonable application of the <u>Jackson</u> standard to the facts of the

case.  <u>Coleman v. Johnson</u>, 132 S.Ct. at 2062; <u>Juan H. v. Allen</u>, 408

F.3d at 1275.  The determination of the state court of last review

on a question of the sufficiency of the evidence is entitled to

considerable deference under 28 U.S.C. § 2254(d).  <u>Coleman v.</u>

<u>Johnson</u>, 132 S.Ct. at 2065.

Here, the state court articulated the appropriate <u>Jackson</u> standards and applied them in an objectively reasonable manner.  The state court properly concluded that although there were contrary inferences that could have been drawn regarding the element of touching, a rational trier of fact could have concluded that Petitioner touched Scaife with the weapon indirectly through Scaife's clothing.  The state court correctly determined that the <u>Jackson</u> standard requires that a reviewing court uphold the rational inferences that support the judgment and refrain from re-weighing the facts.  The fact that there were no additional witnesses who could provide direct evidence of a touching did not render the evidence insufficient because a rational trier of fact could infer that a touching occurred from the evidence of Petitioner's conduct and Scaife's feeling a tug and touching via his clothing.

In sum, the state court's decision on the sufficiency of the evidence was not contrary to, or an unreasonable application of, clearly established federal law.  This conclusion is unaffected by Petitioner's contention that the state court failed to hold an evidentiary hearing on the facts.  Pursuant to <u>Jackson</u>, a sufficiency of the evidence claim does not entitle the claimant to reweighing the facts, let alone additional fact finding.  Further, in reviewing a state court decision pursuant to 28 U.S.C. § 2254(d)(1), this Court is limited to the record that was before the state court.  <u>Cullen v. Pinholster</u>, 131 S.Ct. at 1398.

17

Accordingly, it will be recommended that Petitioner's due process claim concerning the sufficiency of the evidence be denied.

V.  Sentencing Errors under State Law

Petitioner challenges his sentence in multiple respects.  He seeks a stay of the concurrent term imposed for possession of a sharp instrument because the evidence shows that the only time he possessed a weapon was when he was committing the assaults on the correctional officers.  Petitioner relies on state authority and the state statute that limits multiple punishments for the same act, Cal. Pen. Code § 654.  (Doc. 1, 16-19.)  Petitioner also seeks a remand to the sentencing court for the purpose of imposing concurrent terms for his two convictions of assault on the correctional officers instead of the consecutive terms imposed by the trial court.  Petitioner relies on state statutes and cases interpreting those statutes, contending that the sentencing court either failed to exercise informed discretion or abused its discretion by imposing concurrent sentences.  (Doc. 1, 24-29.)

Petitioner's allegations do not entitle him to relief in a 28 U.S.C. § 2254 proceeding.  A claim alleging misapplication of state sentencing law involves a question of state law which is not cognizable in a 28 U.S.C. § 2254 proceeding.  See Lewis v. Jeffers, 497 U.S. 764, 780 (1990) (rejecting a claim that a state court misapplied state statutes concerning aggravating circumstances on the ground that federal habeas corpus relief does not lie for errors

18

of state law); Souch v. Schaivo, 289 F.3d 616, 623 (9th Cir. 2002)

(concluding that claims alleging only that the trial court abused

its discretion in selecting consecutive sentences and erred in

failing to state reasons for choosing consecutive terms are not

cognizable); Miller v. Vasquez, 868 F.2d 1116, 1118-19 (9th Cir.

1989) (concluding that a claim concerning whether a prior conviction

qualified as a sentence enhancement under state law was not

cognizable).  Petitioner has not shown that the challenged aspects

of his sentence violated federal law.

Accordingly, it will be recommended that Petitioner's claims of

error under state sentencing law be dismissed because they are not

cognizable in a proceeding pursuant to 28 U.S.C. 2254.

VI.  Cruel and Unusual Punishment

Petitioner contends his sentence violates the Eighth Amendment

because of the nature of his commitment offenses and the fact that

he cannot possibly serve his sentence in light of his life

expectancy.

A.  The State Court's Decision

The decision of the CCA on Petitioner's claim is as follows:

*Cruel and Unusual Punishment*

Jacobs, who was 34 years old and already serving sentences
of 30 and 32 years to life when sentenced, contends that
his sentence of 94 years to life violates the federal and
state constitutional prohibitions against cruel and
unusual punishment because it is impossible for him to
serve such a lengthy sentence. FN6 He argues his sentence
is disproportionate to his crimes, which occurred during a

19

continuous course of conduct and did not kill or harm
anyone, and when combined with his age, the fact he is
serving two indeterminate terms, and the impossibility of
serving out his sentence during his lifetime, his 94
years-to-life sentence "insults the dignity of man and
exceeds the limits of civilized standards." He relies
exclusively on Justice Mosk's concurring opinion in *People
v. Deloza, supra*, 18 Cal.4th at pp. 600–601, 76
Cal.Rptr.2d 255, 957 P.2d 945, advancing the view that
sentences exceeding a human lifetime are constitutionally
infirm.

> FN6. The People contend that Jacobs has
> forfeited this objection by failing to raise it
> before the trial court. (See, e.g., *People v.
> Kelley* (1997) 52 Cal.App.4th 568, 583, 60
> Cal.Rptr.2d 653; *People v. DeJesus* (1995) 38
> Cal.App.4th 1, 27, 44 Cal.Rptr.2d 796.) Defense
> counsel did argue, however, that sentencing
> Jacobs to more than 27 years to life, for
> example by adding 20 years for the enhancements,
> would be "unconstitutional." While he did not
> use the words "cruel and unusual punishment,"
> the thrust of defense counsel's argument was
> that sentencing Jacobs on more than one count
> would exceed his life expectancy, served no
> purpose, and was a waste. We deem counsel's
> argument sufficient to preserve Jacobs's claim
> that his sentence constitutes cruel and unusual
> punishment.

Numerous courts have concluded that such sentences do not
constitute cruel and unusual punishment. (See, e.g.,
*People v. Byrd* (2001) 89 Cal.App.4th 1373, 1382, 108
Cal.Rptr.2d 243 (*Byrd*) [115 years plus 444 years to life];
*People v. Cartwright* (1995) 39 Cal.App.4th 1123, 1134–1137
[375 years to life plus 53 years]; *People v. Wallace*
(1993) 14 Cal.App.4th 651, 666–667 [283 years and 8 months
sentence for 46 sex crimes against seven victims]; *People
v. Bestelmeyer* (1985) 166 Cal.App.3d 520, 532 [129 years
for 25 sex crimes against one victim].) In *Byrd*, the court
stated: "In our view, it is immaterial that defendant
cannot serve his sentence during his lifetime. In
practical effect, he is in no different position than a
defendant who has received a sentence of life without
possibility of parole: he will be in prison all his life.
However, imposition of a sentence of life without

possibility of parole in an appropriate case does not
constitute cruel or unusual punishment under either our
state Constitution [citation] or the federal
Constitution." (*Byrd, supra*, 89 Cal.App.4th at pp. 1382-
1383, 108 Cal.Rptr.2d 243.)

Besides the impossibility of completing his sentence,
Jacobs asserts the sentence is disproportionate to his
crimes. Under the California Constitution, punishment is
cruel or unusual if, although not cruel or unusual in its
method, it nevertheless is "so disproportionate to the
crime for which it is inflicted that it shocks the
conscience and offends fundamental notions of human
dignity." (*In re Lynch* (1972) 8 Cal.3d 410, 424, 105
Cal.Rptr. 217, 503 P.2d 921, fn. omitted.) The cruel-and-
unusual-punishment clause of the Eighth Amendment of the
federal Constitution also includes a " 'narrow
proportionality principle' that 'applies to noncapital
sentences.'" (*Ewing v. California* (2003) 538 U.S. 11, 20,
123 S.Ct. 1179, 155 L.Ed.2d 108 (*Ewing*).) A determination
of whether a punishment is cruel or unusual because of
disproportionality may be made based on an examination of
the nature of the offense and the offender, "with
particular regard to the degree of danger both present to
society." (*In re Lynch, supra*, 8 Cal.3d at p. 425, 105
Cal.Rptr. 217, 503 P.2d 921; see also *People v. Weddle*
(1991) 1 Cal.App.4th 1190, 1196, 2 Cal.Rptr.2d 714.) With
respect to the offense, we consider "the totality of the
circumstances... in the case at bar...." (*People v. Dillon*
(1983) 34 Cal.3d 441, 479, 194 Cal.Rptr. 390, 668 P.2d
697.) With respect to the offender, we consider his
"individual culpability as shown by such factors as his
age, prior criminality, personal characteristics, and
state of mind." (*Ibid.*) A proportionality analysis can
also take account of punishments imposed for similar or
greater crimes in other cases in California and other
jurisdictions. (*People v. Ruiz* (1996) 44 Cal.App.4th 1653,
1661, 52 Cal.Rptr.2d 561.)

Jacobs has not shown that his sentence constitutes cruel
or unusual punishment according to these criteria. The
current offenses were extremely serious and the offender
is a violent recidivist who has failed to remain crime
free, even while in prison, despite the application of
multiple deterrents and the provision of multiple
opportunities to reform. Jacobs has made no attempt to
show that his punishment is disproportionate in comparison

with punishments for similar or greater crimes in this or other jurisdictions. For these reasons, we find Jacobs's sentence not to be "grossly disproportionate" and therefore not cruel or unusual. (*Ewing, supra*, 538 U.S. at p. 23; *People v. Romero* (2002) 99 Cal.App.4th 1418, 1431, 122 Cal.Rptr.2d 399.)

People v. Jacobs, no. F057101, 2010 WL 1409196 at *8-*9.

> B.  Analysis

A criminal sentence that is "grossly disproportionate" to the crime for which a defendant is convicted may violate the Eighth Amendment.  Lockyer v. Andrade, 538 U.S. 63, 72 (2003); Harmelin v. Michigan, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring); Rummel v. Estelle, 445 U.S. 263, 271 (1980).  Outside the capital punishment context, the Eighth Amendment prohibits only sentences that are extreme and grossly disproportionate to the crime.  United States v. Bland, 961 F.2d 123, 129 (9th Cir. 1992) (quoting Harmelin v. Michigan, 501 U.S. 957, 1001, (1991) (Kennedy, J., concurring)). Such instances are "exceedingly rare" and occur in only "extreme" cases.  Lockyer v. Andrade, 538 U.S. at 72 73; Rummel, 445 U.S. at 272.  A sentence that does not exceed statutory maximums will not be considered cruel and unusual punishment under the Eighth Amendment. See United States v. Mejia Mesa, 153 F.3d 925, 930 (9th Cir. 1998); United States v. McDougherty, 920 F.2d 569, 576 (9th Cir. 1990).

The decisions of the Supreme Court confirm that the Eighth Amendment does not disturb the authority of a state to protect the public by adopting a sentencing scheme that imposes longer sentences

on recidivists who have suffered a serious prior felony conviction. Ewing v. California, 538 U.S. 11, 25 (2003) (upholding a sentence of twenty-five years to life for a recidivist convicted of grand theft); Lockyer v. Andrade, 538 U.S. 63, 66-67, 73-76 (2003) (upholding two consecutive terms of twenty-five years to life and denying habeas relief to an offender convicted of theft of videotapes worth approximately $150 with prior offenses that included first-degree burglary, transportation of marijuana, and escape from prison); Rummel, 445 U.S. at 284 85 (upholding a life sentence with possibility of parole for a recidivist convicted of fraudulently using a credit card for $80, passing a forged check for $28.36, and obtaining $120.75 under false pretenses); see Taylor v. Lewis, 460 F.3d 1093, 1101-02 (9th Cir. 2006) (upholding a sentence of twenty-five years to life for possession of .036 grams of cocaine base where petitioner had served multiple prior prison terms with prior convictions of offenses that involved violence and crimes against the person). The Court has also affirmed severe sentences for controlled substance violations. See Harmelin v. Michigan, 501 U.S. at 962-64 (1990) (upholding a life sentence without the possibility of parole for a defendant convicted of possessing more than 650 grams of cocaine, although it was his first felony offense).

Here, the state court articulated the correct legal standards and properly concluded that Petitioner's sentence was not

disproportionate and did not offend the Eighth and Fourteenth Amendments.  The court noted the limited range of disproportionate sentences recognized as Eighth Amendment violations under Supreme Court authority, the nature and circumstances of Petitioner's commitment offenses, and Petitioner's extended history of having committed serious and violent offenses for which he was already serving sentences of thirty years to life and thirty-two years to life.  (LD 5 at 10.)

Accordingly, it will be recommended that Petitioner's claim of cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments be denied.

VII.  <u>Evidentiary Hearing</u>

Petitioner requests an evidentiary hearing.  (Doc. 31, 2.)

The decision to grant an evidentiary hearing is generally a matter left to the sound discretion of the district courts.  28 U.S.C. § 2254; Habeas Rule 8(a); <u>Schriro v. Landrigan</u>, 550 U.S. 465, 473 (2007).  To obtain an evidentiary hearing in federal court under the AEDPA, a petitioner must allege a colorable claim by alleging disputed facts which, if proved, would entitle him to relief. <u>Schriro v. Landrigan</u>, 550 U.S. at 474.

The determination of entitlement to relief is limited by 28 U.S.C. § 2254(d)(1) and (2), which require that to obtain relief with respect to a claim adjudicated on the merits in state court, the adjudication must result in a decision that was either contrary to, or an unreasonable application of, clearly established federal

24

law, or was based on an unreasonable determination of facts based on the evidence before the state court. Schriro v. Landrigan, 550 U.S. at 474; Earp v. Ornoski, 431 F.3d 1158, 1166-67 (9th Cir. 2005). In analyzing a claim pursuant to § 2254(d)(1), a federal court is limited to the record that was before the state court that adjudicated the claim on the merits. Cullen v. Pinholster, 131 S.Ct. at 1398.

Here, Petitioner has not shown entitlement to relief under § 2254(d). Thus, the Court is not required to hold an evidentiary hearing. Cullen v. Pinholster, 131 S.Ct. at 1399 (citing Schriro v. Landrigan, 550 U.S. 465, 474 (2007)). Accordingly, it will be recommended that Petitioner's request for an evidentiary hearing be denied.

VIII.  Certificate of Appealability

Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the Court of Appeals from the final order in a habeas proceeding in which the detention complained of arises out of process issued by a state court. 28 U.S.C. § 2253(c)(1)(A); Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). A district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Rule 11(a) of the Rules Governing Section 2254 Cases.

A certificate of appealability may issue only if the applicant makes a substantial showing of the denial of a constitutional right. § 2253(c)(2). Under this standard, a petitioner must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented

were adequate to deserve encouragement to proceed further.  <u>Miller-El v. Cockrell</u>, 537 U.S. at 336 (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)).  A certificate should issue if the Petitioner shows that jurists of reason would find it debatable whether: (1) the petition states a valid claim of the denial of a constitutional right, and (2) the district court was correct in any procedural ruling.  <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000).

In determining this issue, a court conducts an overview of the claims in the habeas petition, generally assesses their merits, and determines whether the resolution was debatable among jurists of reason or wrong.  <u>Id.</u>  An applicant must show more than an absence of frivolity or the existence of mere good faith; however, the applicant need not show that the appeal will succeed.  <u>Miller-El v. Cockrell</u>, 537 U.S. at 338.

Here, it does not appear that reasonable jurists could debate whether the petition should have been resolved in a different manner.  Petitioner has not made a substantial showing of the denial of a constitutional right.  Accordingly, it will be recommended that the Court decline to issue a certificate of appealability.

IX.  <u>Recommendations</u>

In accordance with the foregoing, it is RECOMMENDED that:

1)  Petitioner's state law claims be DISMISSED without leave to amend;

2)  The petition for writ of habeas corpus be DENIED;

3)  Judgment be ENTERED for Respondent;

4)  Petitioner's request for an evidentiary hearing be DENIED; and

26

5) The Court DECLINE to issue a certificate of appealability.

These findings and recommendations are submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served and filed within fourteen (14) days (plus three (3) days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, - F.3d -, -, no. 11-17911, 2014 WL 6435497, *3 (9th Cir. Nov. 18, 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **December 8, 2014**          **/s/ Sheila K. Oberto**
                                      UNITED STATES MAGISTRATE JUDGE